**UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA
RENO, NEVADA**

| | |
|---|---|
| TRACY DENNIS, )<br>      )<br>       Plaintiff, )<br>      )<br>v.    )<br>      )<br>MICHAEL ASTRUE, )<br>Commissioner of Social )<br>Security Administration, )<br>      )<br>       Defendant. )<br>_____) | 3:07-CV-00064-ECR-RAM<br><br><br><br>**ORDER** |

Plaintiff Tracy Dennis filed this action on February 9, 2007, challenging the decision of the Commissioner to deny her Title II Disability Insurance Benefits. Currently before the Court are cross-motions for summary judgment. (##7, 10.) For the reasons set out below, Plaintiff's motion for summary judgment (#7) is **GRANTED** and Defendant's motion for summary judgment (#10) is **DENIED**.

   **I.   BACKGROUND**

Plaintiff applied for benefits on March 30, 2004, asserting in her application that she suffers from disabling back pain, fatigue, severe colitis, and depression. She has also alleged that she has

arthritis, and as a result of a severe auto accident on February 2, 2005 (i.e., after her application), she also suffers from migraines.  She alleges a disability onset date of November 2, 2002.  Plaintiff has a highschool education and work experience as a waitress, a saw mill worker, a slotter, and a pulp mill worker. (AR 76.)  In 2003, she worked for two days in one of her sister's restaurants, but stated that she could not continue working as a result of her disability.  (AR 620.)  At the time of her initial application, Plaintiff was 38 years old.

Plaintiff's application was denied on July 23, 2004, and her request for reconsideration was denied on August 18, 2004.  On April 24, 2006, the matter of her application was heard before an Administrative Law Judge (ALJ).  The ALJ did not take testimony from a vocational expert nor from any medical experts.  On July 28, 2006, the ALJ issued a decision finding that Plaintiff is not disabled.

Plaintiff argues that the ALJ improperly discredited her testimony, used an inaccurate residual functional capacity ("RFC") assessment, and improperly failed to call a vocational expert to meet the Commissioner's burden at step 5.  Defendant argues that there was no legal error in the ALJ's reasoning, and that the decision was grounded in substantial evidence.  The Court has received the Report and Recommendation (#12) of the Magistrate Judge, which recommends that the Court affirm the decision of the ALJ.  Plaintiff has filed an Objection (#13) to the Report and Recommendation, and Defendant has filed a Response (#14) to the

2

Objection. The Court will not adopt the Report and Recommendation for the reasons set out below.

### II. STANDARD OF REVIEW

The decision of an Administrative Law Judge (ALJ) will be affirmed if free of legal error and supported by substantial evidence. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Morgan v. Commissioner of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). It is "more than a mere scintilla but less than a preponderance." Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "In determining whether the Commissioner's findings are supported by substantial evidence, [this Court] must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick, 157 F.3d at 720. "If the evidence can reasonably support either affirming or reversing the [Commissioner's] conclusion, the court may not substitute its judgment for that of the [Commissioner]." Id. at 720-21.

### III. ANALYSIS

The Commissioner follows a five-step sequential evaluation process in assessing whether a claimant is disabled:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two. Step two: Does the claimant have a

3

"severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.  Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.  Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.  Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (summarizing 20 C.F.R. § 404.1520).  If, as here, the claimant shows an inability to perform past relevant work at "step four," a prima facie case of disability is established and at "step five" the burden shifts to the Commissioner to show that the claimant can perform work that exists in "significant numbers" in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience.  Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995).  Here, the ALJ utilized "the grids" to meet this burden.  See 20 C.F.R., Pt. 404, Subpt. P, App. 2.

"Generally, a claimant's credibility becomes important at the stage where the ALJ is assessing residual functional capacity, because the claimant's subjective statements may tell of greater limitations than can medical evidence alone."  Tonapetyan v. Halter, 242 F.3d 1144, 1147 (9th Cir. 2001).  A credibility determination regarding subjective ailments requires a two-step analysis.  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  Lingenfelter v. Astrue, 504 F.3d 1028, 1036

4

(9th Cir. 2007) (quoting <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).  Once the claimant produces medical evidence of an underlying impairment that is reasonably likely to produce the claimed symptoms, the Commissioner may not discredit the claimant's testimony as to those subjective symptoms merely because they are unsupported by objective evidence.  <u>Lingenfelter</u>, 504 F.3d at 1035-36; <u>Tonapetyan</u>, 242 F.3d at 1147-48; <u>Bunnell</u>, 947 F.2d at 345-46.  Absent affirmative evidence of malingering, the reasons given for rejecting the claimant's statements must be specific, clear, and convincing.  <u>Orn v. Astrue</u>, 495 F.3d 625, 635 (9th Cir. 2007); <u>Tonapetyan</u>, 242 F.3d at 1148-49.[1]  "Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and 'unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment.'"  <u>Orn</u>, 495 F.3d at 636 (quoting <u>Fair v. Bowen</u>, 885 F.2d 597, 603 (9th Cir. 1989)).

   The ALJ did not examine any of these factors.  Instead, the ALJ simply reasoned that "the degree of chronic pain alleged" was not sufficiently substantiated by the objective evidence.  (AR 32.)

---

[1] The Ninth Circuit derived this standard from Social Security Ruling 96-7p.  <u>See</u> <u>Tonapeytan,</u> 242 F.3d at 1147.  The ALJ explicitly cited Security Ruling 96-7p in his decision.  Both the ALJ and the Magistrate Judge noted in passing that there have been recent amendments to 20 C.F.R. § 404.1529, but it appears that these amendments do not affect the legal standard; Defendant has not argued that <u>Bunnell</u> is not controlling.  <u>See</u> <u>Orn</u>, 495 F.3d at 635-36; 20 C.F.R. § 404.1529(c)(2) ("we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements").

On this basis, the ALJ found that Plaintiff was able to undertake sedentary work. We agree with the Magistrate Judge that there is no evidence of malingering, and that the record clearly indicates medical impairments that could reasonably be expected to produce the symptoms of which Plaintiff complains. See Lingenfelter, 504 F.3d at 1036 ("The claimant . . . 'need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'") (quoting Smolen, 80 F.3d at 1282). The nature of the symptoms, and to a great extent their degree, are abundantly supported not only by the diagnoses of the treating physicians but also by the number and nature of the medications that were prescribed and administered to Plaintiff by her treating physicians.[2]

This is not to say that the objective medical evidence was entirely consistent. Dr. Singh's letters, for example, stated:

> I believe the patient is disabled as a result of the above pain. [ ¶ ] Diagnoses:
> 1. From pain management view, lumbar spondylosis.
> 2. Discogenic disease of the lumbar spine.
> 3. Severe colitis.
> The patient is unable to work at her usual job of waitress as she has hard [sic] time in carrying heavy plates and being upright at the same time. [ ¶ ] Recommendation: My recommendation would be that the patient is disabled at this time.

---

[2] We note that the number and nature of the medications prescribed to Plaintiff is evidence that the ALJ seems to have substantively ignored. See Social Security Ruling (SSR) 96-7p (1996) (the adjudicator "must consider . . . 4. The type, dosage, effectiveness, and side effects of any medication"); 20 C.F.R. § 404.1529(c)(3)(iv) (same). The ALJ made only one passing reference to the fact that Plaintiff had been prescribed methadone, and otherwise merely noted if there was a physician's chart note stating that the pain treatment was effective.

6

(AR 161, 162.)  Other physicians found no evidence of spondylosisthesis, and either found no spondylosis or made no mention of it.  (AR 27, 181.)  That said, however, Plaintiff had very clearly met step one, and it was legal error simply to discredit the claimant's testimony solely on the basis of the objective medical evidence.  Lingenfelter, 504 F.3d at 1036.  Defendant cites Tidwell v. Apfel, 161 F.3d 599 (9th Cir. 1998), but that case provides no support for Defendant in this case.  There, the ALJ found the claimant not credible for multiple reasons, and the ALJ did not rely solely on the objective medical evidence.  Id. at 602.

    In recommending that the Court affirm, the Magistrate Judge appears to have reasoned that Plaintiff was temporarily, but not permanently disabled.  Indeed, the record reveals that Plaintiff's various physicians prescribed large amounts of powerful pain medications prior to administering three epidural injections to her spine, and that she subsequently reported some amount of relief as a result of these injections.  (AR 493.)[3]  Ultimately, however, if the ALJ was relying on the chronology and evolution of Plaintiff's

---

[3] It was around this time that Plaintiff's chart notes at Spine Nevada began to state "FCE: sedentary limits, 10 lbs lifting max." (AR 461.)  In addition, however, completely contrary to the ALJ's findings that colitis had effectively become a non-issue that could be excluded from Plaintiff's RFC, the same treatment notes indicate that Plaintiff was having renewed intestinal flare ups.  (AR 493; AR 499.)

7

ailments, he failed to so state,[4] and he also failed to inquire about the evolution of Plaintiff's ailments in relation to Plaintiff's testimony at the evidentiary hearing.  Where, as here, there is sufficient evidence at step one, no controlling precedent suggests that an ALJ may rely solely on the objective evidence at step two.  See Lingenfelter, 504 F.3d at 1036.

Defendant takes the position that the discussion of daily activities in the ALJ's decision indicates that the ALJ did not rely solely on the objective medical evidence.  However, the ALJ's discussion of Plaintiff's daily activities added nothing to his credibility assessment.  The Ninth Circuit has quite recently reiterated that daily activities cannot simply be cited as inherently detracting from a plaintiff's credibility.  See Orn, 495 F.3d at 639.  Instead, daily activities may be the basis of an adverse credibility determination in two ways: they may either (1) contradict other testimony, or (2) reveal abilities that are "transferable" to the workplace.  Id.  Just as reasons for discrediting a claimant's statements must be specific, an ALJ must make specific findings related to the transferability of daily activities to a work setting.  Id.

The ALJ commented that Plaintiff's activities were consistent with his own findings (AR 32); he did not, however, cite any

---

[4] This Court is "constrained to review the reasons the ALJ asserts.  It [is] error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss." Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) (citations omitted; modification supplied); see also Pinto v. Massanari, 249 F.3d 840, 847-8 (9th Cir. 2001) (citing S.E.C. v. Chenery Corp., 332 U.S. 194, 196 (1947)).

8

inconsistency in Plaintiff's testimony or conduct.  The ALJ's comment that Plaintiff's activities "indicate an ability to perform sedentary activity," (AR 32), can be construed as an implicit finding that her activities were "transferable" to the work place.  But in reviewing the record, it becomes clear that, rather than supporting the ALJ's credibility finding, the ALJ's analysis of Plaintiff's daily activities simply took that finding for granted.  Plaintiff testified that her home activities are confined to "some baking," picking things up, the laundry with some help, and making the bed.  Plaintiff stated that she would crochet "just very small bits at a time."  (AR 631.)  She also testified that she drives her children to school in the morning.  There is no evidence in the record regarding how long a drive this is.  She also testified that she has virtually no social activities outside the home and that she no longer goes to church, but that she might go to one of her children's softball games if the weather was warm.  There is no evidence in the record of how frequent this would be or what it would entail, other than Plaintiff's statement that she would sit in the truck with a blanket if the weather was cold.  Finally, she testified that she would go shopping, but only with the assistance of her family.  To the extent that the ALJ suspected that Plaintiff's enumerated activities were inherently transferable to the workplace, he failed to develop the record and make specific findings to support this conclusion.  There is no inherent irreconcilability between Plaintiff's daily activities and her testimony regarding her disability.  See Orn, 495 F.3d at 639 (rejecting credibility assessment because of a lack of evidence

9

that the activities were "transferable" and because of lack of evidence that the claimant spent a "substantial" part of the day engaged in those activities); Fair, 885 F.2d at 603 ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits . . . and many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication.") (citations omitted); Gallant v. Heckler, 753 F.2d 1450, 1453, 1457 (9th Cir. 1984) (ordering award of benefits for constant back and leg pain where the claimant cooked and did the dishes). Cf. Tonapeytan, 242 F.3d at 1150 ("The ALJ in a social security case has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered.") (internal quotation marks omitted).

In sum, the ALJ's credibility finding was grounded in legal error. It is not necessary for the Court to comment on whether the RFC was incomplete or inaccurate, or whether a vocational expert was required under the circumstances, except to say that the ALJ's findings and analysis on these issues depended upon his credibility assessment.

**IV.  CONCLUSION**

The ALJ explicitly stated that he would have found that Plaintiff was disabled had he credited her testimony. (AR 30.) There is some doubt regarding whether the doctrine that a claimant's testimony must be "credited as true" if it has been

10

1  improperly discredited by the ALJ is "mandatory" in the Ninth
2  Circuit.  See Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir.
3  2003) (noting that the propriety of remanding for reconsideration
4  of credibility determinations was implicitly approved by the Ninth
5  Circuit en banc in Bunnell).  However, the Ninth Circuit has
6  recently held that: "When an 'ALJ's reasons for rejecting the
7  claimant's testimony are legally insufficient and it is clear from
8  the record that the ALJ would be required to determine the claimant
9  disabled if he had credited the claimant's testimony,' we remand
10 for a calculation of benefits."  Orn, 495 F.3d at 640 (quoting
11 Connett, 340 F.3d at 876); see also Lester, 81 F.3d at 834.

    **IT IS, THEREFORE, HEREBY ORDERED** that Plaintiff's Objection
(#13) is **SUSTAINED**.  Plaintiff's motion for summary judgment (#7)
is **GRANTED** and Defendant's motion for summary judgment (#10) is
**DENIED**.  The matter is **REMANDED** to the Social Security
Administration for the calculation of benefits.  The clerk shall
enter judgment accordingly.

DATED: This  5th   day of March, 2008.

_____
           UNITED STATES DISTRICT JUDGE

11